People v Duane MM.

2026 NY Slip Op 02484

April 23, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Duane MM., Appellant.

Decided and Entered:April 23, 2026

CR-24-1778

Calendar Date: March 26, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mcshan, JJ.

Dana L. Salazar, East Greenbush, for appellant.

Mary Pat Donnelly, District Attorney, Troy (Michael Allain of counsel), for respondent.

[*1]

Pritzker, J.

Appeal from an order of the County Court of Rensselaer County (Debra Young, J.), entered August 28, 2024, which denied defendant's motion for resentencing pursuant to CPL 440.47, after a hearing.

In 1996, defendant was convicted following a jury trial of two counts of murder in the second degree, two counts of grand larceny in the fourth degree and three counts of petit larceny. The charges stemmed from the shooting deaths of victim A and his son, victim B, in their home by defendant, who was then 16 years old and living in the victims' home. Defendant then absconded in victim B's vehicle after pilfering cash and jewelry from the home. Defendant was sentenced to consecutive prison terms of 25 years to life for each of the murder convictions and 1⅓ to 4 years for each grand larceny conviction, as well as concurrent one-year jail terms for the petit larceny convictions. In 2022, defendant requested and was granted permission to file an application for resentencing pursuant to the Domestic Violence Survivors Justice Act (hereinafter the DVSJA) (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, § 1, part WW, § 1). Following a hearing, County Court denied defendant's application finding that, although defendant suffered unthinkable sexual abuse for years at the hands of his father until defendant was approximately 10 years old, the abuse was not a significant contributing factor to defendant's criminal conduct and, given the nature and circumstances of the crime, the sentence was not unduly harsh. Defendant appeals.

The DVSJA was enacted "in recognition of the national epidemic of domestic violence and the failure of prior law to allow judges discretion to fully consider the impact of domestic violence in making sentencing determinations . . . [and] permits courts to sentence defendants to an alternative, less severe sentence if the defendant was a victim of domestic violence and convicted of certain eligible offenses" (People v Brenda WW., 44 NY3d 594, 598 [2025] [internal quotation marks and citation omitted]; accord People v Hernandez, 44 NY3d 630, 634 [2025]). Pursuant to the DVSJA, a court may apply an alternative sentencing scheme when it determines, after a hearing, that the defendant has established by a preponderance of the evidence "three factors listed in Penal Law § 60.12 (1): that (a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant; (b) such abuse was a significant contributing factor to the defendant's criminal behavior; and (c) having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, a standard sentence of imprisonment would be unduly harsh and a reduced sentence warranted" (People v Angela VV., 44 NY3d 1061, 1062 [2025] [internal quotation marks, ellipses, brackets and citations [*2]omitted]; see People v Ava OO., 233 AD3d 1186, 1187 [3d Dept 2024]).

In an attempt to demonstrate that the sexual abuse was a significant contributing factor in the murders pursuant to the second prong of the DVSJA analysis, defendant relied upon the testimony of Adrienne Meier, a forensic psychologist, who testified that defendant's sexual abuse and resulting trauma played a significant factor in the commission of the crimes, and that alleged taunting of defendant by victim A about such abuse triggered defendant's reaction of rage and anger with no rational thought. However, although Meier reviewed, among other things, some prior psychological reports and the defense portion of the trial transcript, she never met or spoke with defendant, did not review defendant's detailed statement regarding the crimes, did not review any materials, evaluations or reports performed at or near the time of the offenses and was unaware of relationship dynamics defendant had with the victims' family or how defendant came to live with them. Further, while Meier opined that defendant's prior sexual abuse was a significant contributing factor in the murder of victim A, Meier offered no nexus between defendant's sexual abuse history and the murder of victim B. Thus, our independent review of the record reveals that, in light of these failings, little weight should be given to Meier's testimony (see People v Brenda WW., 44 NY3d at 600-601).

As for defendant's comprehensive statement detailing the events that led to the crimes, it too offers no causal nexus between the sexual abuse suffered by him and his actions in, among other things, the murder of the victims. That statement recounts that, on the day of the murders, defendant skipped school as he was too tired after staying up all night watching pornographic movies. Defendant reported that, when victim A came home in the afternoon, he started harassing defendant about disrupting the family, which "pissed off" defendant. Defendant then described going to the basement, retrieving and loading the rifle, then running up the second floor to victim A's bedroom where victim A had his back to the door reading something, yelling his name and, as victim A turned around, firing a shot from the rifle striking victim A. Defendant recounted that, when he tried to fire the rifle again, it jammed. Defendant reported that, at that point, he was "scared" and "wanted to kill [victim A] so [that] he could [not] call the police," so he ran to his bedroom — a bedroom he shared with victim B — to stash the rifle then ran back to the basement where he retrieved and loaded a shotgun. Defendant then described how he shot victim A — who was yelling defendant's name and asking "why" — four more times, the last of which was a shot to victim A's head. At that point, defendant reported that he heard victim B's car pulling into the front of the house, so he picked up the spent rounds off the floor and stairwell, went to his bedroom and reloaded the [*3]shotgun with several more rounds. Defendant recounted that he knew he either had to get out of the house "or kill [victim B] so [that] he would [not] call the police," so he "decided . . . to kill him." According to defendant, he went downstairs under the guise of asking victim B how to clean a gun and emptied all but one shell from the shotgun, handing the rounds to victim B. The two went into the basement where victim B put the shells away and, as victim B reached for the gun to put it away, defendant "pointed the barrel up toward [victim B's] face and pulled the trigger," shooting him in the neck and killing him. Defendant stated that he then removed money and car keys from victim B's pockets, packed some clothes, stole jewelry from various rooms in the house and, after making two trips to load victim B's car, drove away.

Defendant's statement continues to recount how he then drove to his friend's house, stashed the shotgun under a porch, then he — along with his friend and two others — drove to another friend's house where they "partied." Defendant also explained how he disposed of victim B's car that evening by pushing it over a cliff and distributed the jewelry among his friends. In view of the foregoing, the record fails to establish by a preponderance of the evidence that the trauma from the sexual abuse suffered by defendant as perpetrated by his father was a significant contributing factor in his criminal behavior (see People v Angela VV., 229 AD3d 955, 957-958 [3d Dept 2024], affd 44 NY3d 1061 [2025]; compare People v Brenda WW., 222 AD3d 1188, 1192 [3d Dept 2023], mod 44 NY3d 594 [2025]).

We further conclude that, given the nature and circumstances of the crimes, particularly as set forth in defendant's statement regarding the crimes and lack of any information regarding defendant's conduct while incarcerated, defendant has failed to establish by a preponderance of the evidence the third prong of the DVSJA analysis that the sentence imposed is unduly harsh (see Penal Law § 60.12 [1] [c]; People v Boyd P., 232 AD3d 1000, 1002 [3d Dept 2024], lv denied 43 NY3d 1006 [2025]). As defendant failed to sustain his burden of demonstrating that exercise of a sentencing reduction is warranted, defendant's application for resentencing was properly denied (see generally People v Angela VV., 44 NY3d at 1063).

Aarons, J.P., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.

ORDERED that the order is affirmed.